UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Kathy L. Kessel,
    Plaintiff,

v.   CIV NO.

Wachovia Securities, Inc., and
Michael A. Ewanouski
    Defendants.

## COMPLAINT

1. Plaintiff, Kathy L. Kessel ("Ms Kessel"), resides at 22 Pilgrim Rd., Ashland, Massachusetts 01721.

2. Defendant, Wachovia Securities, LLC. ("Wachovia"), has a place of business at 901 E. Byrd St. Riverfront Plaza, Richmond, Virginia 23219.

3. Defendant, Michael A. Ewanouski ("Mr. Ewanouski") has an address at Wachovia Securities, LLC, 80 Washington St., Bldg. A, Norwell, Massachusetts 02061.

4. On or about January 26, 2004 and continuing until January 27, 2004, Ms Kessel, Wachovia and Mr. Ewanouski engaged in an arbitration under the auspices of the NASD. A copy of Ms Kessel's statement of Claim is attached hereto as Exhibit A

5. The decision of the Arbitrators is attached hereto as Exhibit B.

6. The decision by the Arbitrators was contrary to the facts and law to the extent that the Arbitrators exceeded their powers and so imperfectly executed their powers that a mutual, final and definite award upon the subject matter was not made.

WHEREFORE, the Award dated June 5, 2003 should be vacated pursuant to 9 U. S. C. §10 and

the matter should be referred for a new arbitration.

                                          THE PLAINTIFF
                                          By her attorney

                                          Edmund Polubinski, Jr.
                                          BBO #402640
                                          Richardson and Tyler, LLP
                                          15 Broad Street
                                          Boston, MA 02109

Dated: May 6, 2004

## NASD ARBITRATION

In the Matter of the Arbitration between:

Kathy L. Kessel

vs.

Wachovia Securities, Inc.

and

Michael A. Ewanouski.

### Statement of Claim

Claimant, Kathy A. Kessel ("Claimant") sets forth the following facts:

1. Claimant began her involvement with Respondent, Wachovia Securities, Inc. (then First Union Corporation), and with Respondent Mr. Ewanouski in February of 2000.

2. Claimant had told Mr. Ewanouski that her investment objectives were to secure enough moneys to retire early. Consistent with the foregoing goal, she also wanted more growth for her investments. She was then 48 years old, her daughter had finished schooling and was married and Claimant had no further obstacles to financing her retirement. She had invested in investment companies but had not engaged in buying or selling equity securities since the early 1980s. She thus had little or no recent experience in investing in equity securities.

3. Claimant had been employed by, and then had over $1,050,000 in value of stock of, net.Genesis, which had an initial public offering of common stock, and which had attached significant restrictions upon Claimant's resale of that stock. She was to have three accounts with Respondent Wachovia (then First Union Corporation) two of which were: a personal account which became # 4740-7577 ("Personal Account") and was theretofore invested in investment companies, and the other an individual retirement account which became #4740-7581 ("IRA Account") and was theretofore similarly invested. A third account, which became #4749-7579 ("Special Account"), contained a speculative security. Mr. Ewanouski recommended, and indirectly, on behalf of Claimant, purchased on January 20, 2000, 1100 shares of Elot, Inc., a speculative security for $ 9,834.38. He touted its virtues and did not mention its risks or the risks of holding it when virtually all of Claimant's portfolio was

1

invested in risky, speculative investments. Mr. Ewanouski continued to espouse it and never recommended its sale. The market value for the entire 1100 shares on January 31, 2003 was 88 cents. **The loss was $9,833.50.**

Claimant entrusted most of her non IRA funds to the predecessor of Wachovia and Mr. Ewanouski in March of 2000. He then invested her Personal Account. In each and every case below, he explained the upside potential of stock purchases to her and she agreed to purchase them. He did not, however, explain the risks of the particular highly speculative securities he recommended, the risks of overconcentration in the high technology/internet area (or for that matter in speculative stocks) or whether these stocks fulfilled her needs for achieving safely, early retirement.

On March 13, 2000 Mr. Ewanouski recommended, and on behalf of Claimant, purchased for the Personal Account the following:

| | |
|---|---|
| 275 shares of UPS-B | $14,729.69 |
| 290 shares Medtronic, Inc. | $14,590.63 |
| 329 shares MCI Worldcom, Inc. | $14,500.00 |
| 555 shares Information Architects Corp. | $14,846.25 |
| 275 shares Information Architects Corp. | $ 7,459.38 |
| 1200 shares Intasys Corp. | $15,150.00 |
| 245 shares AOL, Inc. | $14,853.13 |

On March 14, 2000 Mr. Ewanouski recommended and, on behalf of Claimant, purchased for the Personal Account:

250 shares of Millenium Pharm.     $47,312.50

On March 31, 2000 Mr. Ewanouski recommended and, on behalf of Claimant, purchased for the Personal Account:

| | |
|---|---|
| 500 shares of Information Arch. | $ 8,343.75 |
| 1,000 shares of Intellidata T. Corp. | $16,125.00 |

Her Personal Account was more (she later discovered that certain of the purchases were made on margin-which caused her some surprise) than fully invested.

2

4. Of the $168,576.11 invested in March, 2000, the only investments even remotely suitable for Claimant's objectives were UPS, Medtronic and Millenium. Respondents soon took care of that.

On May 2, 2000. Mr. Ewanouski again explaining the upside potential but not explaining the risks of a particular security, or of overconcentration and without regard to her objectives, sold AOL, UPS and Medtronic for loss or small profit and Mr. Ewanouski recommended and, on behalf of Claimant, purchased the following:

| | |
|---|---|
| 300 shares CMGI, Inc. | $18,918.75 |
| 100 shares CMGI, Inc. | $ 6,300.00 |
| 445 shares Inf. Architects Corp. | $ 5,200.00 |
| 1500 shares Intellidata T. Corp. | $16,125.00 |

And on June 7-8, 2000 Claimant sold Millineum at a profit but Mr. Ewanouski recommended and, on behalf of Claimant, purchased the following:

| | |
|---|---|
| 300 shares Scient | $17,400 |
| 400 shares Scient | $23,150 |
| 300 shares Scient | $17,325 |

Now *none* of the shares purchased for Claimant's Personal Account fulfilled Claimant's objective and Claimaint's entire Personal Account was invested in high risk technology/internet stocks. The unsuitable stock Mr. Ewanouski purchased for Claimant was in addition to her illiquid net.Genesis stock which had similar properties. Respondents had knowledge of the foregoing.

5. Respondents then went to work investing Claimant's IRA Account which on May 31, 2000 had a value of $140, 323.18. Without explaining the risks of the particular stock, without explaining the risks of overconcentration or of unsuitability and while touting the below named stocks, Respondents purchased for Claimant's IRA Account:

| | |
|---|---|
| 250 shares CMGI, Inc. | $15,170.88 |
| 100 shares CMGI, Inc. | $ 6,075.00 |
| 350 shares Cisco Systems, Inc. | $22,465.63 |
| 350 shares Sandisk Corp. | $23,800.00 |
| 350 shares Amgen | $23,384.38 |

The only stock in the IRA account that met suitability standards was a predecessor of Verizon at a value on June 8, 2000 of $24,328.13. The highly speculative stock, however, Mr. Ewanouski had purchased for the account had a value of $90,985.89 that day.

6. While Claimant was lucky enough to reap a profit of a couple of hundred dollars on her investment in Amgen, approximately $6,375 in her investment in Scient and a few other trades, the above investments were utter disasters. On or about March, 2001 and thereafter in early and mid year 2001, Claimant, after noting severe losses to her accounts, requested Mr. Ewanouski to sell certain of those securities and purchase with the proceeds thereof investments that were more conservative.

7. The following are the losses in the Personal Account:

March 15, 2001

| | |
|---|---|
| 400 shares of CMGI, Inc. sold for $1,337.50 | Loss $23,881.25 |
| 1775 shares of Inf. Architects Corp. sold for $2,107.81 | Loss $33,741.57 |
| In addition Claimant suffered a loss on Nokia | Loss $ 3,898.00 |

July 11, 2001

Claimant suffered a loss on Intel    Loss $3,024.35

On December 30, 2002 the value of her investment in Intasys Corp. and Intellidata T. Corp.were losses:

| | |
|---|---|
| 120 shares Intasys Corp. value $153.60 | Loss $14,996.40 |
| 2500 shares Intellidata T. Corp, value $2,250 | Loss $30,000.00 |

8. The concentrated and speculative investments in the IRA Account fared no better.

March 15, 2001

350 shares of Sandisk Corp. sold for $7,021.88    Loss $16,778.12

May 30, 2001

350 shares Cisco Systems, Inc. sold for $6,664.00    Loss $15,801.63

4

On January 31, 2003

      350 shares of CMGI, Inc. had a value of $311.50      **Loss $20.934.38.**

9. The value of the IRA Account on January 31, 2003 was $49.878.27.

10. Throughout the period, Respondents invested Claimant's Accounts in high risk technology/internet stocks in disregard for her objectives of an early retirement.

11. As a result thereof she is unable to secure early retirement.

12. Respondents at the same time, knowing of her sizable (over $1,000,000), illiquid investment in a speculative internet stock, net.Genesis, did not diversify her holdings but instead invested in similar stocks or high technology stocks with similar attributes and failed to diversify her portfolio and failed to warn her of the risks on such action.

13. Furthermore, Respondents failed to offer, until after Claimant had absorbed significant losses, stocks which would have been more suitable and/or which would have diversified her portfolio (and then offered such stocks at her request).

14. As a result of such practices by Respondent, Claimant has been damaged in the amount of $172,889.20.

15. Because of the egregious nature of Respondents' acts, Claimant is entitled to punitive damages in the amount of $345,778.40, attorney's fees and costs.

4677.0001 claim 1.0
3/31/03

5

# Award
## NASD Dispute Resolution

In the Matter of the Arbitration Between:

Kathy L. Kessel and Kathy L. Kessel IRA (Claimants) v. Wachovia Securities, LLC., and Michael A. Ewanouski (Respondents)

Case Number: 03-02543                    Hearing Site: Boston, Massachusetts

Nature of the Dispute: Customers vs. Member and Associated Person.

## REPRESENTATION OF PARTIES

Claimants Kathy L. Kessel ("Kessel") and Kathy L. Kessel IRA ("Kessel IRA") hereinafter collectively referred to as "Claimants": Edmund Polubinski, Jr., Esq., Zimble & Brettler, LLP, Boston, MA.

Respondents Wachovia Securities, LLC ("Wachovia") and Michael A. Ewanouski ("Ewanouski") hereinafter collectively referred to as "Respondents": David L. Ward, Esq. and Pete S. Michaels, Esq., Murphy & Michaels, LLP, Boston, MA. Previously represented by: Scott M. Murray, Esq., Wachovia Securities, Inc., Richmond, VA.

## CASE INFORMATION

Statement of Claim filed on or about: March 31, 2003.
Response to Respondents' Motion to Dismiss filed by Claimant on or about: June 24, 2003.
Kessel signed the Uniform Submission Agreement: March 27, 2003.

Joint Statement of Answer and Motion to Dismiss filed by Respondents on or about: June 6, 2003.
Wachovia signed the Uniform Submission Agreement: June 6, 2003.
Ewanouski signed the Uniform Submission Agreement: June 10, 2003.

## CASE SUMMARY

Claimants asserted the following causes of action: misrepresentation; omission of facts; and suitability. Claimants' claim involved certificates of deposit, shares of Elot, Inc., UPS-B, Medtronic, Inc., MCI Worldcom, Inc., Information Architects Corp., Intasys Corp., AOL, Inc., Millenium Pharm., Intellidata T. Corp., CMGI, Inc., Scient, Cisco Systems, Inc., Sandisk Corp., and Amgen.

Unless specifically admitted in their Answer, Respondents denied the allegations made in the Statement of Claim and asserted various affirmative defenses.

## RELIEF REQUESTED

Claimants requested damages in the amount of $172,889.20; punitive damages in the amount of $345,778.40; attorneys' fees and costs.

Respondents requested that the Panel dismiss the Statement of Claim in its entirety; order expungement of this matter from Ewanouski's Central Registration Depository ("CRD") record; award Respondents their costs and attorneys' fees expended in defense of this matter; assign all forum fees and costs to Claimants and award any other relief as is just and proper.

## OTHER ISSUES CONSIDERED AND DECIDED

The parties have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

## AWARD

After considering the pleadings, and the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1. Claimants' claims are hereby denied in their entirety.

2. Respondent Ewanouski's Request for Expungement of his CRD records is denied.

3. Any and all relief not specifically addressed herein, including punitive damages, is denied.

## FEES

Pursuant to the Code, the following fees are assessed:

### Filing Fees
NASD Dispute Resolution will retain or collect the non-refundable filing fees for each claim:
| | |
|---|---|
| Initial claim filing fee | = $375.00 |

### Member Fees
Member fees are assessed to each member firm that is a party in these proceedings or to the member firm that employed the associated person at the time of the events giving rise to the dispute. Accordingly, Wachovia Securities, LLC. is a party.
| | |
|---|---|
| Member surcharge | = $2,250.00 |
| Pre-hearing process fee | = $ 750.00 |
| Hearing process fee | = $4,000.00 |

NASD Dispute Resolution
Arbitration No. 03-02543
Award   Page 3 of 4

**Forum Fees and Assessments**
The Panel has assessed forum fees for each session conducted. A session is any meeting between the parties and the arbitrators, including a pre-hearing conference with the arbitrators, that lasts four (4) hours or less. Fees associated with these proceedings are:

| | | | |
|---|---|---|---|
| One (1) Pre-hearing session with Panel @ $1,200.00 | | | = $1,200.00 |
| Pre-hearing conference: | September 4, 2003 | 1 session | |
| | | | |
| Four (4) Hearing sessions @ $1,200.00 | | | = $4,800.00 |
| Hearing Dates: | January 26, 2004 | 2 sessions | |
| | January 27, 2004 | 2 sessions | |

Total Forum Fees                                                    = $6,000.00

1. The Panel has assessed $3,000.00 of the forum fees jointly and severally against Claimants.
2. The Panel has assessed $3,000.00 of the forum fees jointly and severally against Respondents.

### Fee Summary

1. Claimants are jointly and severally liable for:
   | | |
   |---|---|
   | Initial Filing Fee | = $ 375.00 |
   | Forum Fees | = $3,000.00 |
   | Total Fees | = $3,375.00 |
   | Less payments | = $1,700.00 |
   | Balance Due NASD Dispute Resolution | = $1,675.00 |

2. Wachovia is solely liable for:
   | | |
   |---|---|
   | Member Fees | = $7,000.00 |
   | Total Fees | = $7,000.00 |
   | Less payments | = $7,000.00 |
   | Balance Due NASD Dispute Resolution | = $ 0.00 |

3. Respondents are jointly and severally liable for:
   | | |
   |---|---|
   | Forum Fees | = $3,000.00 |
   | Total Fees | = $3,000.00 |
   | Less payments | = $ 0.00 |
   | Balance Due NASD Dispute Resolution | = $3,000.00 |

All balances are payable to NASD Dispute Resolution and are due upon receipt pursuant to Rule 10330(g) of the Code.

NASD Dispute Resolution
Arbitration No. 03-02543
Award   Page 4 of 4

## ARBITRATION PANEL

Tom L. Peterson, Esq.            -   Public Arbitrator, Presiding Chair
William George Hayward, Jr., Esq. -   Public Arbitrator
John A. Morin, Esq.              -   Non-Public Arbitrator

### Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am the individual described herein and who executed this instrument, which is my award.

_[signature]_                                         Feb. 8, 2004
Tom L. Peterson, Esq.                                 Signature Date
Public Arbitrator, Presiding Chairperson


William George Hayward, Jr., Esq.                     Signature Date
Public Arbitrator


John A. Morin, Esq.                                   Signature Date
Non-Public Arbitrator

February 13, 2004
Date of Service  (For NASD Dispute Resolution use only)

NASD Dispute Resolution
Arbitration No. 03-02543
Award   Page 4 of 4

## ARBITRATION PANEL

| | | |
|---|---|---|
| Tom L. Peterson, Esq. | - | Public Arbitrator, Presiding Chair |
| William George Hayward, Jr., Esq. | - | Public Arbitrator |
| John A. Morin, Esq. | - | Non-Public Arbitrator |

### Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am the individual described herein and who executed this instrument, which is my award.

_____        _____
Tom L. Peterson, Esq.              Signature Date
Public Arbitrator, Presiding Chairperson

*[signed]*                          2/10/04
William George Hayward, Jr., Esq.   Signature Date
Public Arbitrator

_____        _____
John A. Morin, Esq.                 Signature Date
Non-Public Arbitrator

February 13, 2004
_____
Date of Service (For NASD Dispute Resolution use only)

NASD Dispute Resolution
Arbitration No. 03-02543
Award   Page 4 of 4

## ARBITRATION PANEL

Tom L. Peterson, Esq.                    -   Public Arbitrator, Presiding Chair
William George Hayward, Jr., Esq.  -   Public Arbitrator
John A. Morin, Esq.                      -   Non-Public Arbitrator

### Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am the individual described herein and who executed this instrument, which is my award.

_____          _____
Tom L. Peterson, Esq.                                        Signature Date
Public Arbitrator, Presiding Chairperson


_____          _____
William George Hayward, Jr., Esq.                            Signature Date
Public Arbitrator


*John G. Mori* (signature)                    2/11/04
John A. Morin, Esq.                                          Signature Date
Non-Public Arbitrator


February 13, 2004
_____
Date of Service  (For NASD Dispute Resolution use only)